IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br><br>vs<br><br>1) JACOBO GARCIA<br>2) ROLANDO ANTONIO PULA-MORETA<br>a/k/a Chichi<br>**3) RICHARD MARTINEZ-CAMACHO**<br>a/k/a Richie<br>4) CECIL STEPHEN DERWEER<br>Defendants | CRIMINAL 05-0071CCC |

**O R D E R**

      Before the Court is the Statement of Objections to Presentence Investigation Report filed by defendant Richard Martínez-Camacho on April 6, 2006 (**docket entry 178**), the United States' response filed on May 5, 2006 (**docket entry 192**), the Reply to the United States' response filed by defendant Martínez-Camacho on June 2, 2006 (**docket entry 200**), and the DEA-6 Report of Agent Roberto Cruz dated January 5, 2005 and a recorded conversation between agent Cruz and defendant Martínez-Camacho of December 30, 2004 submitted by the United States in compliance with the Court's Order dated May 25, 2006 (see docket entry 198).

      Defendant Martínez-Camacho's sole objection is to the failure of the U.S. Probation Officer to award him a two-level downward adjustment under U.S.S.G. §3B1.2(b) for his alleged minor role in the offense. Martínez-Camacho claims that he is entitled to receive said adjustment since his self-described role in the offense was limited to having an initial meeting with the potential drug buyer (who was actually an undercover agent) and advising his co-defendants that the "buyer" could be trusted. The United States submits, in response, that the fact that Martínez-Camacho was delegated the responsibility of determining whether buyers could be trusted reflects that he held a position of trust within the drug organization. In addition, the United States proffers that during the initial meeting with the undercover agent defendant represented to him that the price of the cocaine he wanted to buy would not be further increased and also told the agent that he would have to travel by plane to St. Croix so

that he would be given the coordinates where the drugs would be picked up.  While this information is contained in the DEA-6 Report of Agent Roberto Cruz dated January 5, 2005, the recorded conversation of their meeting (Exhibit N-6) reflects that Martínez-Camacho made clear to Agent Cruz that the price of the drug was set by others in the organization and that he was asked to met Cruz to determine if the organization could do business with him.  The United States also advanced that in a later telephone conversation with the undercover agent just after his co-defendants were arrested once the drug transaction was completed, defendant claimed that had he been in St. Croix at the time of the transaction he would have conducted the sale in a more expeditious manner.  The recording of this conversation, however, was not submitted to the Court although the government was ordered to do so on May 25, 2006 (see docket entry 198).  According to the government, these events denote the degree of Martínez-Camacho's involvement within the drug organization.  Defendant replied, in turn, that there are recordings between agent Cruz and co-defendant Rolando Pula-Moreta (Pula) not mentioned by the government in its response which supposedly demonstrate that defendant Martínez-Camacho was acting under the auspices of Pula.  Defendant also contends that he "did not participate in negotiations regarding the quantity and price of the drugs."  Reply (docket entry 200), at p. 4.

      Having reviewed the evidence submitted by the government in response to the Court's Order, i.e. the DEA-6 Report of Agent Roberto Cruz dated January 5, 2005 and the recorded conversation of Cruz' meeting with Martínez-Camacho on December 30, 2004, (Exhibit N-6), we must conclude that the finding made in the PSR at ¶9 that on December 30, 2004 "Richard Martínez and the UA agent negotiated multi-kilograms of cocaine for [$]11,000.00 a kilogram and for pick-up in St. Croix, USVI" is inaccurate.  The recording of the December 30, 2004 meeting between Cruz and Martínez-Camacho reflects that Cruz had already started to negotiate the purchase of drugs with others in the organization when he met with Martínez-Camacho, and that while details such as the number of kilos and where the drug would be delivered remained to be finalized, these would be discussed with those others at a subsequent meeting.  The recording establishes that Martínez-Camacho's only task in the December 30, 2004 meeting was to determine whether Cruz was a bona-fide buyer with whom the organization could continue to negotiate.

CRIMINAL 05-0071CCC                                3

While defendant posits that this role in the overall scheme, which he describes as "limited," warrants a minor role adjustment under U.S.S.G. §3B1.2(b), we do not agree. "It is improper for a court to award a minor participation adjustment simply because a defendant does less than the other participants. Rather, the defendant must do enough less so that he at best was peripheral to the advancement of the illicit activity." U.S. v. Thomas, 932 F.2d 1085, 1092 (5th Cir. 1991). The role which defendant admits having played in this particular drug transaction, i.e. determining that the potential "buyer" could be trusted and that the sellers could proceed to negotiate with him, was not peripheral. It was, instead, essential to the successful completion of the drug-trafficking offense. Although defendant was not the main participant in this plot, his role was of great significance in the overall scheme. Defendant acted, in essence, as a gatekeeper, on whose presumptive screening abilities the main players relied to determine if they would do business with prospective buyers. Thus, while defendant's role in the offense was very specific and particular, it was certainly not minor. See United States v. Salgado, 250 F.3d 438, 458 (6th Cir.2001) (a defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme). As such, we do not consider that defendant was "substantially less culpable" than his co-conspirators within the circumstances of this offense, meriting a minor role adjustment. See United States v. Latouf, 132 F.3d 320, 332 (6th Cir. 1997) ("A defendant whose participation is indispensable to the carrying out of the plan is not entitled to a role reduction.")

In sum, we do not consider that defendant is eligible for a minor-role adjustment under Guideline Section §3B1.2(b). Accordingly, and for the reasons stated, the Statement of Objections to Presentence Investigation Report filed by defendant Martínez-Camacho on April 6, 2006 (**docket entry 178**) is OVERRULED.

SO ORDERED.

At San Juan, Puerto Rico, on August 31, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge